# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                            |       |                        |
| ------------------------------------------ | ----- | ---------------------- |
|                                            | *     |                        |
| **DELORES ALEXANDER,**                     | *     |                        |
|                                            | *     |                        |
| Plaintiff,                                 | *     |                        |
|                                            | *     |                        |
| v.                                         | *     | Case No.: RWT 09cv2402 |
|                                            | *     |                        |
| **MARRIOTT INTERNATIONAL, INC.,** *et al.* | *     |                        |
|                                            | *     |                        |
|                                            | *     |                        |
| Defendants.                                | *     |                        |
|                                            | *     |                        |

## <u>MEMORANDUM OPINION</u>

Plaintiff Delores Alexander ("Alexander") brings this employment discrimination complaint against her former employer, Marriott International, Inc. ("Marriott") and her former supervisor, Jack Ballestero ("Ballestero"). For the reasons set forth below, the Court will dismiss Alexander's Amended Complaint and deny her Motion for Leave to File a Second Amended Complaint.

## <u>FACTS</u>

Alexander was hired as a Senior Database Analyst for Marriott Execustay's Information Resources Division on April 30, 2001. *See* Amended Complaint, ECF No. 11, at 3. Alexander alleges that, following multiple re-organizations of her division, she was asked to perform additional managerial duties not included in her initial job description. Alexander claims she essentially performed the duties of a Manager of Information Resources and a Senior Systems Analyst. *Id.* at 3-7.

In 2006, Ballestero was hired by Marriott as a Manager of Information Resources, and in 2007, he was promoted to the position of Director of Information Resources. *Id.* at 7. As

Director of Information Resources, Ballestero oversaw four divisions within Marriott's Information Resources division: MarrSTAR systems, eFolio systems, MICS systems, and Execustay, the division in which Alexander worked. *Id* at 7-8. The MarrSTAR division was managed by Srkanth Kodali ("Kodali") and Jeff Hicks ("Hicks"), Managers of Information Resources. *Id.* at 8-9. MICS was headed by Frank Roebuck ("Roebuck"), a Senior Systems Analyst. *Id.* Alexander alleges Kodali, Hicks, and Roebuck were paid more than she was even though she allegedly performed duties similar to, or in excess of, the duties they performed. *Id.* On November 8, 2007, Alexander unsuccessfully complained to Marriott management about the greater pay allegedly received by male employees and claimed that she was being discriminated against because she is an African-American woman. *Id.* at 13-14, 17-18.

On November 12, 2007, Ballestero informed Alexander that he had received complaints about her availability, and revoked her alternative work arrangement ("AWA") which had allowed her to work from her home three days per week. *Id.* at 13. Alexander alleges that these complaints were fabricated because of her race and gender, and in retaliation for her repeated requests for promotion. *Id.* at 16-17. Alexander also alleges that after her AWA privileges were revoked, her arrival and departure times from work were closely monitored, while her fellow employees were not so monitored. *Id.* at 20. Additionally, Alexander alleges that after Ballestero revoked her AWA, he refused to allow her to complete work assignments at home, required her to complete 95% of Execustay "issue" tickets, and excluded her from staff meetings. *Id.* at 23-24, 26.

On November 27, 2007, Alexander applied for the advertised position of Manager of Information Resources at Marriott, but was denied an interview. *Id.* The job posting was eventually cancelled. *Id.*

On November 29, 2007 and February 8, 2008, Ballestero issued Alexander written warnings for lateness, which Alexander claims were not warranted under Marriott's disciplinary policies. *Id.* at 21, 24. Alexander also alleges that Ballestero gave her a smaller merit increase in 2008 than she had received before, and revoked her reimbursement for home internet service despite the fact that she used her home internet for work purposes. *Id* at 26-27. Alexander alleges that Ballestero's actions were the result of retaliatory and discriminatory animus and claims that she suffered various ailments as a result of the stress caused by his actions. *Id.* at 28-29, 33-34.

On May 12, 2008, after unsuccessfully attempting to secure employment in a different division within Marriott, Alexander resigned from her position in Marriott's Execustay Division. *Id.* at 39.

## PROCEDURAL HISTORY

Alexander filed a Charge of Discrimination with the Montgomery County, Maryland, Office of Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC") on August 25, 2008. *See* Am. Compl., Ex. 1. The EEOC issued Alexander a "Right to Sue" letter on March 23, 2009. *Id.* Ex. 2. On September 19, 2009, Alexander filed a complaint in this Court alleging that Marriott had violated Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and Section 215(a)(3) of the Fair Labor Standards Act. ECF No. 1. Alexander also claimed that she was constructively discharged as a result of the retaliation she experienced after complaining of unequal pay. *Id.*

On November 12, 2009, Marriott moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 5. Alexander filed a Motion for Leave to File an Amended Complaint on March 31, 2010. ECF No. 11. Alexander's proposed amended

complaint added claims of wage discrimination, sexual discrimination, retaliation, harassment, disparate treatment and constructive discharge in violation of Maryland's Fair Employment Practices Act ("FEPA") and 42 U.S.C. § 1981, and withdrew her FLSA and Title VII claims. ECF No. 11. Alexander's Amended Complaint also added Ballestero, her supervisor at Marriott, as a defendant. *See id.* at 1. Marriott did not object to Alexander's motion, and the Court granted Alexander leave to amend on April 22, 2010. *See* ECF Nos. 12-13.

On May 20, 2010, Marriott moved to dismiss Alexander's Amended Complaint. ECF No. 17. Ballestero joined in Marriott's Motion to Dismiss. *See* ECF No. 28. Alexander subsequently filed a Motion for Extension of Time to file an opposition to Marriott's Motion to Dismiss, which was granted. *See* ECF No. 19. Alexander then requested a continuance of Marriott's Motion to Dismiss to allow her to perform further discovery. The Court denied this request on June 23, 2010, explaining that the purpose of a motion to dismiss was to test the sufficiency of the complaint, not to resolve factual disputes. *See* ECF Nos. 21-22.

On July 7, 2010, Alexander filed an opposition to Marriott's Motion to Dismiss. ECF No. 23. Alexander's opposition provided additional facts in support of her claims, apparently in an attempt to buttress her Amended Complaint.

Over three months later, Alexander filed a Motion for Leave to File a Second Amended Complaint. Alexander's putative Second Amended Complaint separates her claims into twelve counts and lists "Damages" in a separate section, but otherwise contains very similar factual allegations to those contained in her Amended Complaint. ECF No. 31. Marriott opposed Alexander's motion, arguing that Alexander's proposed amendments are futile. *See* ECF No. 34. Both Defendants' Motion to Dismiss and Alexander's Motion for Leave to file a Second Amended Complaint are ripe for resolution.

<u>**STANDARDS OF REVIEW**</u>

**I.  Motion To Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In order to survive a 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Ashcroft v. Iqbal*, the Supreme Court clarified that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  129 S. Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S. at 555.

The Court must consider all well-pleaded allegations in the complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005).  Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted).  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (emphasis added).

### II. Motion for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that, more than 21 days after a responsive pleading or a motion to dismiss is served, "[a] party may amend its pleading only with the opposing party's written consent or the court's leave." "The court should freely give leave [to amend] when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 290 (4th Cir. 2008). Futile amendments are those that cannot survive a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420-21 (4th Cir. 1990); *Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F. Supp. 2d 451, 459 (D. Md. 2005).

### ANALYSIS

Alexander attached a large number of exhibits to her amended complaint which, pursuant to Federal Rule of Civil Procedure 10(c), are "a part of the pleading for all purposes." Therefore, the Court may consider all exhibits attached to Alexander's Amended Complaint in determining whether Marriott's motion to dismiss should be granted. *Philips v. Pitt County Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009). "When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached [to the complaint] or adopted by reference, the exhibits or documents prevail." *Fare Deals Ltd. V. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir.1991)).

Alexander's Amended Complaint must be dismissed. Though her pleading is long and contains many facts, even the most liberal reading of Alexander's Amended Complaint fails to reveal any claim upon which relief can be granted.

## I.  Equal Pay Act

Alexander alleges that she was denied equal pay in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1). In order to state a claim that Defendants violated the Equal Pay Act, Alexander must allege that "she received less pay than a [specific] male co-employee performing work substantially equal in skill, effort, and responsibility under similar working conditions." *EEOC v. Liggett & Myers, Inc.,* 690 F.2d 1072, 1076-78 (4th Cir. 1982), *accord Houck v. Virginia Polytechnic Institute and State Univ.*, 10 F.2d 204, 206 (4th Cir. 2003), *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 161 (4th Cir. 1992). "If the jobs to be compared have a common core of tasks, i.e. significant portions of the two jobs are identical, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility." *Reece v. Martin Marietta Tech., Inc.*, 914 F. Supp. 1236, 1241 (D. Md. 1995) (internal quotations omitted). "Skill is a function of experience, training, education, and ability, and is measured in terms of performance requirements of the job." *Id.* (internal quotations omitted). "Responsibility measures, among other things, the degree of accountability to higher ups." *Id.* (internal quotations omitted). "Effort refers to the physical or mental exertion necessary to the performance of a job." *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981).

Although "job content, not job title or classification, is the focus of the unequal pay inquiry," *Reece*, 914 F. Supp. at 1244, a plaintiff's supervisor will rarely, if ever, be a proper "comparator" for analysis under the Equal Pay Act. *Trusty v. Maryland*, 28 F. App'x 327, 329

(4th Cir. 2002) (supervisor and subordinate were not similarly situated), *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F. Supp. 2d 577, 585 (D. Md. 2005) (same). Even individuals with similar job titles will not necessarily be similarly situated if one exercises greater decision-making authority than another. *See Gustin v. West Virginia University*, 63 Fed. App'x 695, 699 (4th Cir. 2003) (assistant deans with same job title but different levels of authority not similarly situated under Equal Pay Act).

Alexander was a Senior Database Analyst in the Execustay Information Resource Division at Marriott, Am. Compl. at 3, and none of the male employees that she names as potential comparators held the same position. First, Alexander seeks to compare herself to Ballestero, her supervisor. Alexander's Amended Complaint acknowledges that Ballestero was responsible for managing four divisions within Marriott's Information Resources Division. Am. Compl. at 7-8. The Amended Complaint does not allege that Alexander was responsible for managing multiple divisions or subordinates, as Ballestero concededly was. Thus Alexander and Ballestero were not alike in their responsibilities for managing personnel or corporate divisions and Ballestero is therefore an improper comparator under the Equal Pay Act.

Alexander next seeks to compare herself to Frank Roebuck ("Roebuck"), Manager of Information Resources for the MICS Division and Srkanth Kodali ("Kodali"), a Senior Systems Analyst within the MarrStar Division. Alexander's Amended Complaint alleges that "[a]lthough [she] performed the same Manager of Information Resources and Senior Systems Analyst duties and responsibilities that Mr. Roebuck and Mr. Kodali performed respectively, they were paid a higher rate than [she] was paid, along with fringe benefits (bonus), to perform these same Manager of Information Resources and Senior Systems Analyst duties and responsibilities." Am. Compl. at 8.

Other than this conclusory allegation, nothing in Alexander's Amended Complaint supports her claim that her job was substantially similar to Roebuck's or Kodali's. Alexander draws no parallels between the daily tasks performed by her and those performed by Roebuck and Kodali, who worked in different divisions at Marriott. Nor does Alexander allege that she was held to the same standards of accountability to higher-ups as were Roebuck and Kodali. Alexander also does not allege that she worked under similar conditions as Roebuck or Kodali. Alexander does not in any way compare her level of skill, ability, training, or experience to Roebuck's or Kodali's. Alexander makes no factual allegations comparing her level of skill, ability, training, and experience to Hicks' level of skill, ability, training and experience, nor does she compare their daily tasks. In sum, Alexander fails to state any facts which would allow the Court to infer that male employees performing equal work were paid more than she was.

Rather, the thrust of Alexander's Equal Pay Act claim appears to be that she was required to perform more responsibilities than a Senior Database Analyst *should have been* required to perform, and therefore deserved the pay of a manager. Alexander's Amended Complaint alleges that she functioned as a *de facto* Manager of Information Resources in Marriott's Execustay Information Resources Division after a corporate reorganization in 2002 eliminated half of the employees in that division. Am. Compl. at 3. She alleges she performed "additional Manager's duties [of] data conversion project management and development of methods and standards for data management" starting in 2002. *Id.* In 2003, the Manager of Information Resources position was eliminated and Alexander asserts that she was given more managerial responsibilities at that time. *Id.* Alexander claims Ballestero delegated various functions properly characterized as "managerial" to her to perform. *Id.* at 9. These allegations, even if proven, fail to show that Alexander's job was substantially similar to the jobs performed by Ballestero, Roebuck, Kodali

or Hicks. Because Alexander's Amended Complaint fails to identify a male comparator who performed substantially equal work for more pay, Alexander's Equal Pay Act claim must be dismissed.

## II. Wage Discrimination in Violation of Maryland's FEPA

Alexander also alleges she was subject to wage discrimination in violation of Maryland's FEPA. *See* Am. Compl. at 7. While Alexander cites to an older version of Maryland's FEPA—Md. Code, art. 49B, § 16—the Court presumes Alexander attempts to state a claim for wage discrimination under the current version of FEPA, Md. Code, State Government, § 20-606 or § 20-607. Both sections prohibit employers from discriminating against any individual with respect to compensation because of that individual's sex.

Alexander's FEPA claim must be dismissed because she has failed to identify a male comparator who received greater pay for equal work. FEPA is the state law analogue to Title VII of the Civil Rights Act of 1964. *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007). To state a wage discrimination claim under Title VII, a plaintiff must demonstrate that she is "a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by males." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). Though the level of "similarity between male and female-occupied jobs" is more "relaxed" under Title VII than under the Equal Pay Act, Alexander fails to draw any parallels between her job responsibilities and those of her male co-workers. *Id.* As discussed, *supra*, Alexander has not compared her daily tasks, her level of accountability, her skills and experience, or any other aspect of her job to her purported male comparators. Because Alexander failed to identify a single male employee with a similar job who was paid more than she was, her FEPA wage discrimination claim must be dismissed.

### III.  Sexual Discrimination in Violation of Maryland's FEPA

Plaintiff alleges that Marriott's failure to promote her, Ballestero's revocation of her Alternative Work Arrangement ("AWA"), his close monitoring of her arrival and departure times, his issuance of written warnings related to her tardiness, and his requirement that Alexander "complete 95% of the issue tickets received for [her] project team," constituted disparate treatment sex discrimination in violation of Maryland's FEPA.  Am. Compl. at 2 (ECF No. 11).

As discussed, *supra*, FEPA is the state law analogue of Title VII, and therefore to state a claim under FEPA for disparate treatment sex discrimination, Alexander must allege sufficient facts for the court to infer that (1) she is a member of a protected class; (2) she had satisfactory job performance; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment.  *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 214 (4th Cir. 2007).

Alexander is a woman and therefore a member of a protected class.  Whether she had satisfactory job performance is unclear at this stage in the litigation—Alexander claims she excelled at her job and performed tasks above and beyond what was required by her job description.  Marriott asserts that Alexander was chronically tardy, and therefore her job performance was not satisfactory.  The Court need not resolve this factual dispute because Alexander suffered no adverse employment action.[1]

As the Fourth Circuit has recognized, "the employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred."  *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).  An adverse employment action is an

---

[1] In any event, whether the employee's performance was satisfactory is not determined from the employee's perspective, but rather from the employer's perspective.  *See Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) (plaintiff-employee's perception of his own competence is irrelevant).

action that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland*, 487 F.3d at 219 (4th Cir. 2007). Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, withdrawal of a special privilege is not an adverse employment action. *See, e.g., Von Gunten v. Maryland*, 243 F.3d 858 (4th Cir. 2001). In *Von Gunten v. Maryland*, the Fourth Circuit held that an employer's withdrawal of an employee's use of a state vehicle did not constitute an adverse employment action because the employer was not obligated to provide the employee with the car as a "benefit" of her employment and withdrawal of use of the vehicle was not accompanied by any negative economic impact on the employee. *Id.*, *overruled on other grounds by Burlington Northern v. White*, 548 U.S. 53, 67-68 (2006).

Clearly, revocation of Alexander's AWA and consequent refusal to reimburse her for home internet service were not adverse employment actions. Alexander concedes that she was the only employee who had the privilege of working from home and she does not allege that revocation of her AWA was accompanied by any decrease in pay, demotion, or any other action that could reasonably be characterized as an adverse employment action. Am. Compl. at 14. Ballestero's revocation of Alexander's internet reimbursement was clearly the consequence of his direction to her to work from the office. Similarly, the fact that Ballestero monitored Alexander's arrival and departure times is not an adverse action; Alexander does not allege that Ballestero's monitoring of her in order to guarantee that she was at work during normal business hours had any detrimental economic impact on her. As this Court observed in *Chika v. Planning Research Co.*, "animus cannot be inferred from the day-to-day conduct of supervisors that [plaintiffs] may deem inconvenient, inconsiderate or insufficiently solicitous." 179 F.Supp.2d 575 (D. Md. 2002) *quoting Settle v. Baltimore County*, 34 F.Supp.2d 969, 993 (D. Md. 1999).

Finally, Alexander's contention that she was required to complete a disproportionate amount of the "tickets" for her project team cannot be considered an adverse employment action because such a requirement did not adversely affect the conditions of her employment. Indeed, the completion of tickets was Alexander's primary job responsibility and she concedes that the individual responsible for the remainder of the tickets was only a "backup," support employee. Am. Compl. at 23.

Alexander's receipt of two, written warnings regarding her tardiness is not an adverse employment action. A poor performance evaluation is "actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms and conditions of the recipient's employment." *James v. Booz-Allen Hamilton, Inc.,* 368 F. 3d 371, 377 (4th Cir. 2004). Alexander fails to allege that the written warnings Ballestero wrote were used as the basis for detrimentally altering the terms or conditions of her employment. *Chika*, 179 F. Supp. 2d at 587.

Further, Alexander fails to allege facts from which the Court can infer that Marriott's failure to promote her was the result of discriminatory animus. To state a claim for discriminatory failure to promote, Alexander must plead facts from which the Court can infer that (1) she is a member of a protected class; (2) that Defendant did not promote her to a given position; (3) that Defendant placed another person outside the protected group in the position; and (4) that Plaintiff was qualified for the position. *Evans v. Tech. Applications & Svcs. Co.*, 875 F. Supp. 1115, 1123 (D. Md. 1995). Alexander's Amended Complaint contains no facts indicating that Defendant placed another person outside the protected group in the position for which she applied. Further, an exhibit attached to Alexander's Amended Complaint shows that the position was not filled by any of the three applicants for the position to which Alexander

applied, even though two of the applicants were men. *See* Am. Compl., Ex. 34. Alexander's claim of discriminatory failure to promote therefore fails as a matter of law.

Because Alexander fails to allege facts from which the Court can infer that she was subject to an adverse employment action or denied promotion because of her sex, her claim of sexual discrimination under FEPA must be dismissed.

## IV. Retaliation in Violation of Maryland's FEPA

"To prevail in a claim for retaliation, the employee must show that she was subjected to retaliatory treatment for engaging in protected conduct." *Giant of Maryland, LLC v. Taylor*, 981 A.2d 1, 23 (Md. App. 2009). Retaliatory treatment "encompasses any action by the employer that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotations omitted) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). To state a claim for retaliation, the employee must allege that the retaliation produced an injury or harm. *Burlington Northern*, 548 U.S. at 66.

Alexander has not articulated any injury or harm that would dissuade a reasonable worker from making or supporting a charge of discrimination. In support of her retaliation claim, Alexander alleges that her AWA was revoked and she was required to work at the office during normal business hours; she received two written warnings for tardiness; she was excluded from certain meetings; and she received only a 2% merit increase instead of a 4% merit increase following her complaints about pay discrimination.

Revocation of a special privilege to work from home cannot constitute an injury for purposes of stating a retaliation claim. Alexander was the only employee who had the privilege of working from home and she does not allege that revocation of her AWA was accompanied by any decrease in pay, demotion, or any other result that could reasonably be characterized as an

injury. Am. Compl. at 14. In requiring Alexander to work from the office, Marriott was merely enforcing generally applicable employment policies, the enforcement of which cannot support a retaliation claim. *See Wells v. Gates*, 336 Fed. App'x 378, at *5 (4th Cir. 2009) ("An employer may enforce generally applicable employment policies against its employees without creating a cause of action for retaliation.") Further, a reasonable worker would not find revocation of a privilege to work from home sufficiently adverse to dissuade her from complaining about discrimination.

Similarly, the receipt of two warnings for tardiness is not a sufficiently adverse action to dissuade a reasonable employee from making or pursuing a discrimination charge. Alexander does not claim she was not *actually* tardy on the dates she received warnings—she only complains that she should have received verbal warnings before being given written warnings, or should not have received warnings because she had legitimate excuses for being late. *See* Am. Compl. at 21, 24 (explaining that Alexander was late because she had been working late the night before, and on the second occasion, stayed at home to finalize her mortgage). The receipt of two warnings for tardiness when the employee was in fact tardy is not sufficiently severe to deter a reasonable person from protesting discriminatory treatment.

Alexander does not allege that her exclusion from meetings resulted in any tangible injury to her—rather she alleges vaguely that it made it more difficult to perform her job and that she "felt degraded and humiliated" as a result of her exclusion from these meetings "because it was obvious to [her] and [her] co-workers that [she] was no longer apart [*sic*] of the decision making process for Marriott Execustay's Information Resources division." *Id.* at 24. Mere exclusion from meetings—absent any tangible, corresponding injury—is not conduct that would dissuade a reasonable worker from making or pursuing a charge of discrimination.

The Court assumes, *arguendo*, that the receipt of a smaller bonus than previously received is an injury sufficient to support a retaliation claim.[2]  However, Alexander has not sufficiently alleged that there was a causal connection between her receipt of a 2% bonus on March 8, 2008 and her November 8, 2007 complaint to Ballestero that she was receiving unequal pay because of her gender.  *See* Am. Compl. at 12, 27.  An adverse employment action that occurs months after an employee engaged in a protected activity will not give rise to an inference that there is a causal connection between the protected activity and the adverse action.  *See Booth v. District of Columbia*, 701 F. Supp. 2d 73 (D.D.C. 2010) (while adverse personnel action which occurs shortly after protected activity may give rise to an inference of causation, so as to support Title VII retaliation claim, action which occurs more than three or four months after protected activity is not likely to qualify for such a causal inference); *Pierce v. Target Stores, Inc.,* 206 Fed. App'x. 865 (11th Cir. 2006) (discharged employee failed to make out a *prima facie* showing of retaliation where employee had received 15 productivity warnings, counseling, and discipline, both oral and written, for violating company rules, and employee was fired six months after he sent complaint); *MacKenzie v. City and County of Denver*, 414 F.3d 1266 (10th Cir. 2005) (causation element of city employee's ADEA retaliation claim against city was unsatisfied, where employee proffered only temporal proximity between protected act and adverse employment action as evidence of causation, but period of between five months and eight months had elapsed between protected acts and adverse actions); *Bolin v. Oklahoma Conference of the United Methodist Church*, 397 F. Supp. 2d 1293 (N.D. Okla. 2005) (female employee was not entitled to inference that termination was causally connected to her refusal to submit to supervisor's alleged sexual advances, where employee was terminated more than four months

---

[2] The Court notes, however, that it is doubtful that a reasonable person would be dissuaded from making or pursuing a discrimination charge due to a 2% reduction in bonus pay.

after alleged quid pro quo sexual harassment); *Baker v. Potter*, 294 F. Supp. 2d 33 (D.D.C. 2003) (two month gap between female letter carrier's filing of Equal Employment Opportunity (EEO) complaints and Postal Service's decision not to select her for acting supervisor position was insufficient to establish temporal connection between actions, and thus did not support carrier's retaliation claim under Title VII). It would require more than a gigantic leap of faith to infer that Ballestero's decision to give Alexander a 2% bonus, rather than a 4% bonus, five months after she complained of pay discrimination was a result of Alexander's pay discrimination complaint. Alexander has alleged no facts in support of her claim that the events are causally linked, and her claim must therefore be dismissed.

### V.    Sexual Harassment in Violation of Maryland's FEPA

As far as the Court can discern, Alexander's claim for "harassment" in violation of the FEPA is a claim for sexual harassment based on a hostile work environment. In order to state a hostile work environment claim, plaintiff must allege facts from which the Court can infer "(1) that she was harassed 'because of' her 'sex'; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 241 (4th Cir. 2000). In support of her hostile work environment claim, Alexander alleges that Ballestero "expressed his dislike for the female Managers," had "hostile confrontations with female Managers," made "rude comments to [Alexander] about Ms. Craw and stated that female Managers do not know how to manage projects as well as the male Managers." Am. Compl. at 31.

Assuming these allegations are true, such comments are not sufficiently severe or pervasive to create an abusive working environment. In determining whether derogatory

comments rise to the level of "severe or pervasive" conduct, a court must consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *First Union Nat. Bank*, 202 F.3d at 242. Alexander does not allege that such comments were frequent, physically threatening, or humiliating, nor does she allege that Ballestero's comments interfered with her work performance. Therefore, Alexander fails to state a claim under a hostile work environment theory and her "harassment" claim under the FEPA must be dismissed.

### VI. Constructive Discharge under Maryland Law

Alexander alleges that Marriott constructively discharged her, in violation of Maryland law. Am. Compl. at 36. An employee is constructively discharged when "the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign." *Williams v. Maryland Dept. of Human Resources*, 764 A.2d 351, 365 (Md. App. 2000), *quoting Moniodis v. Cook*, 494 A.2d 212 (1985).

As an initial matter, "[a] failure to promote is insufficient in itself to result in a constructive discharge." *Bristow v. Daily Press*, 770 F.2d 1251, 1256 n.4 (4th Cir. 1985). Further, even considering Alexander's allegations on the whole, Ballestero's actions cannot be said to have caused Alexander's constructive discharge. Alexander alleges she was subjected to "stressful conditions at work," beginning with Ballestero's insistence that Alexander perform her job from the office during normal business hours. *See* Am. Compl. at 14, 33-37. Even assuming Ballestero made isolated, offensive comments about female managers, monitored Alexander's arrival and departure times closely, and wrote her two warnings for tardiness, such conduct is not

so intolerable that a reasonable person would have felt compelled to resign. Therefore, Alexander's claim of constructive discharge under Maryland law is dismissed.

## VII.    Violation of 42 U.S.C. § 1981

Alexander alleges Defendants engaged in discrimination, harassment, and disparate treatment based on her race in violation of 42 U.S.C. § 1981. *See* Am. Compl. at 11. Alexander alleges almost no facts in support of her race discrimination claims. *See* Am. Compl. at 30-31. The analytical framework applied to a Section 1981 claim is the same as that applied to a Title VII case. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1509 (10th Cir. 1997). Because Alexander has not plead facts from which the Court can reasonably infer that she suffered an adverse employment action, or that she was denied promotion based on her race, her race discrimination claims must be dismissed.

## VIII.   Emotional Distress

Alexander includes in her Amended Complaint a section entitled "Damages—Emotional Distress." The Court will construe this as a claim for intentional infliction of emotional distress. To state a claim of intentional infliction of emotional distress, Alexander must allege facts from which the Court can infer that: (1) Defendants' conduct was intentional or reckless; (2) their conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and Plaintiff's emotional distress; and (4) the emotional distress is severe. *Carter v. Aramark Sports and Entm't Serv's, Inc.,* 153 Md. App. 210, 245, 835 A.2d 262 (2003). The conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Batson v. Schiflett*, 325 Md. 684, 733, 602 A.2d 1191 (1992).

Alexander's Amended Complaint fails to allege facts from which the Court can infer that Defendants' alleged conduct was extreme and outrageous. At most Alexander alleges that Ballestero made her employment unpleasant and inconvenient by revoking here AWA and monitoring her arrival and departure times. Ballestero's actions toward Alexander—requiring her to come to work during regular business hours, monitoring her arrival and departure, giving her warnings for tardiness—cannot possibly constitute extreme and outrageous conduct. Unpleasant though Alexander may have found her new work schedule, and stressful as she may have found the increased friction with Ballestero, nothing in Alexander's Amended Complaint supports an inference that she was subject to conduct of the type that is utterly intolerable in a civilized society. Alexander's intentional infliction of emotional distress claim is meritless.

## IX. Leave to Amend

The Federal Rules of Civil Procedure dictate that leave to amend a complaint should be freely given unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 290 (4th Cir. 2008). Alexander's proposed Second Amended Complaint demonstrates the utter futility of allowing her leave to amend her complaint yet again. Alexander's proposed Second Amended Complaint cures few, if any, of the defects outlined in this memorandum opinion, and asserts nearly identical facts as does her Amended Complaint. There is simply no actionable claim under the facts alleged. This was an employment relationship gone sour—nothing more. This is not the stuff of a successful civil action. In addition, Alexander delayed almost five months after Marriott filed its Motion to Dismiss before seeking leave to amend again. Alexander's request is therefore dilatory and

would prejudice Defendants by extending this already protracted litigation. Accordingly, the

Court will deny Alexander's Motion for Leave to File a Second Amended Complaint

A separate Order follows.


March 29, 2011                     _____/s/_____
Date                              Roger W. Titus
                                  United States District Judge